Intervale Ave II Assoc LP v Martinez (2024 NY Slip Op 50851(U))

[*1]

Intervale Ave II Assoc LP v Martinez

2024 NY Slip Op 50851(U)

Decided on July 8, 2024

Civil Court Of The City Of New York, Bronx County

Lutwak, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 8, 2024
Civil Court of the City of New York, Bronx County

Intervale Ave II Assoc LP, Petitioner (Landlord),

against
V Martinez and J CABRERA, Respondents (Tenants).

Index No. 319834/2023

Petitioner's Attorney:
MATTHEW NATHANIEL KAUFMAN 
Firm Name: Waide Law Office PLLC 
Address: 87-14-116 Street, Richmond Hill, NY 11418 
Phone: 718-412-3785 
Service E-mail: mkaufman@twmt.net
Respondent's Attorney:
DARIA STAFFA BROSIUS 
Firm Name: Mobilization for Justice 
Address: 424 East 147th Street 3rd Floor, Bronx, NY 10455 
Phone: (212) 417-3843 
Service E-mail: dbrosius@mfjlegal.org

Diane E. Lutwak, J.

Recitation, as required by CPLR Rule 2219(A), of the papers considered in the review of Petitioner's Motion for an Order Restoring Proceeding to Calendar, Entering a Judgment and Issuing a Warrant of Eviction (motion seq #2):
PAPERS NYSCEF DOC #
Notice of Motion, Attorney's Affirmation, Affidavit, Exhibits A-B 8
Memorandum of Law in Opposition 9
Affidavit in Opposition 10
Attorney's Affirmation in Opposition 11
Exhibits A-B in Opposition 12-13
Stipulation Dated 3/28/24 (Setting motion down for a TSHA hearing) 14
Petitioner's Exhibits 1-2 15-16
Respondent's Post-Hearing Memorandum of Law 17
Respondent's Exhibits A-H 18-25
This is a nonpayment proceeding commenced by Petition dated April 11, 2023 seeking rent arrears of $40,401.08. Respondent-Tenant Martinez filed an Answer on May 22, 2023 and the case was calendared in Intake Part 1 for August 1, 2023, then transferred to Resolution Part C and adjourned twice. Respondent retained counsel and the case was settled on September 7, 2023 by Stipulation in which Respondent acknowledged owing $49,649.83, to be paid by October 31, 2023 along with October rent. On November 9, 2023 Petitioner filed a motion to restore for a judgment; the motion was settled on December 13, 2023 by Stipulation in which Respondent agreed to pay $53,197.68 plus January rent by January 31, 2024, with reservation of her defense under "TSHA" (New York Tenant Safe Harbor Act, L 2020, ch 127, § 2).
Now before the court is Petitioner's second motion to restore for a judgment. By Stipulation dated March 28, 2024 Petitioner's motion was granted to the extent of restoring the case to the court's calendar for a hearing on Respondent's TSHA defense: that is, because of financial hardship she suffered, the court should sever from any possessory judgment the amount of unpaid rent that accrued during the TSHA "COVID-19 covered period". That hearing took place on May 31, 2024, after which counsel were permitted to file post-hearing briefs. 
THE HEARING
Respondent Vimarie Martinez (sued as "V Martinez", hereinafter "Respondent") was the only witness at the hearing. She testified that she has lived in the subject apartment for approximately ten years; lives there now with her two daughters and a grandson; Respondent-Tenant "J Cabrera", who is the father of her son, left in 2019 and no longer helps pay the rent; made a rent payment in May 2024 and had a money order with her to make another payment; has been working at her current job since June 2023; was hired for her immediately prior job in February 2020 and then terminated on March 21, 2020 due to the COVID-19 pandemic; that termination was without written notice at the time, but she recently obtained a letter from her former supervisor; was unemployed from March 2020 to June 2023; did not apply for unemployment benefits because she knew she was ineligible based on the short length of her employment; filed a COVID-19 "Tenant Hardship Declaration" during the pandemic; was affected by the pandemic in various ways, including that she and her children all got sick from COVID which resulted in increased costs for food and medication, her asthma worsened from having contracted COVID, she was not able to work, and she had no income to pay her bills; the only help she received was from her son who gave her money to pay for food; she did not receive public assistance; she applied for "ERAP" (COVID-19 Emergency Rent Assistance Program), which paid part of her rent arrears; she has a pending application for a "one-shot deal"; she has no assets. In 2021 Respondent was diagnosed with cancer and could not work because of chemotherapy and radiation treatments which lasted through April 2023. Her stove needs to be repaired — the oven and one of the four burners do not work.
Admitted into evidence through Respondent's testimony were copies of her current 2-[*2]year lease renewal for the period of January 1, 2024 through December 31, 2025, with a preferential rent of $1357.58/month (Exhibit A); the offer letter for her current job which started in June 2023 (Exhibit B); the offer letter for her prior job which started in February 2020 (Exhibit D); and her "Tenant's Declaration of Hardship During the COVID-19 Pandemic" dated May 3, 2021, on which she checked off boxes indicating both that she was experiencing financial hardship and that moving from the premises would pose a significant health risk (Exhibit E). 
On cross-examination Respondent testified that she did not work in 2019 and had had financial problems prior to March 2020; prior to the pandemic the rent was paid by her son and her son's father, Respondent-Tenant Javier Cabrera, who moved out in February 2019 and continued to make payments towards the rent in 2019; worked for only six weeks in 2020 and then lost that job; during the pandemic her son gave her money when he got paid to help her pay for food and medication, but he did not pay her rent; has not filed a tax return for a long time; her financial hardships started when Javier left, pre-COVID, then continued during the pandemic; she is better off now than she was during the pandemic.
TSHA
The Tenant Safe Harbor Act provides that "[n]o court shall issue a warrant of eviction or judgment of possession against a residential tenant or other lawful occupant that has suffered a financial hardship during the COVID-19 covered period for the non-payment of rent that accrues or becomes due during the COVID-19 covered period", L 2020, ch 127, § 2[1], which period ran from March 7, 2020 through January 15, 2022, 3612 Broadway Partners LL v Mejia (79Misc 3d 230, 240, 189 NYS3 406, 415 [Civ Ct NY Co 2023]). Such financial hardship is "a defense in a summary proceeding", id., § 2[2][a], as amended by L 2021, ch 417, § 2, Part D. In determining whether the claimant suffered such financial hardship, "the court shall consider, among other relevant factors: (i) the tenant's or lawful occupant's income prior to the COVID-19 covered period; (ii) the tenant's or lawful occupant's income during the COVID-19 covered period; (iii) the tenant's or lawful occupant's liquid assets; and (iv) the tenant's or lawful occupant's eligibility for and receipt of cash assistance, supplemental nutrition assistance program, supplemental security income, the New York State disability program, the home energy assistance program, unemployment insurance or benefits under state or federal law, or the Emergency Rental Assistance Program." The four factors enumerated in the statute are non-exhaustive, and the court must consider them "among other relevant factors", in determining whether financial hardship exists. See, e.g., 111-50 Realty Corp v Melgar (70 Misc 3d 981, 988, 139 NYS3d 778, 783 [Civ Ct Qns Co 2020]).
ERAP
New York State's COVID-19 emergency rental assistance program of 2021 (ERAP) was established by the State Legislature to allow for the distribution of federal and state funds to eligible applicants to pay rent and utility arrears. New York's ERAP Law authorizes assistance to pay rent "accrued on or after March 13, 2020" in the amount of up to twelve months of arrears and three months of prospective rent. L 2021, ch 56, Part BB, Subpart A, § 9, as amended by L 2021, ch 417, Part A, § 5. A landlord's acceptance of rental arrears from ERAP "shall constitute agreement" by the landlord "to not increase the monthly rent due for the dwelling unit such that it shall not be greater than the amount that was due at the time of application to the program for any and all months for which rental assistance is received and for one year after the first rental [*3]assistance payment is received". L 2021, ch 56, Part BB, Subpart A, § 9(2)(d)(iii), as amended by L 2021, ch 417, Part A, § 5. 
UNDISPUTED FACTS
Based on Petitioner's rent ledgers ([NYSCEF Doc ## 16 & 24] and the ERAP approval notices [NYSCEF Doc ## 15 & 23] in the record, the following facts are undisputed:
• Respondent applied for ERAP on March 23, 2022 (application # JNAQE) when her rent was $1260.75/month.
• Petitioner received ERAP funds of $15,129 on or about January 27, 2023, comprised of 12 months' rent at $1260.75/month earmarked for March 2020 through February 2021, with no "prospective rental payments".
• The TSHA period at issue in this proceeding is March 2021 through January 15, 2022, during which time the rent was $1260.75/month.
DISCUSSION
The critical issue to be decided is whether the $15,129 Respondent owes for the 11-month TSHA "COVID-19 covered period" of March 2021 through January 2022 at $1260.75/month [FN1]
should be severed from the amount of any combined possessory and monetary judgment the court awards to Petitioner on its pending motion based on Respondent's failure to comply with the terms of the parties' settlement agreement of December 13, 2023. 
Applying the above-stated legal principles to the facts of this case, the starting point is Respondent's "Declaration of Hardship During the COVID-19 Pandemic", dated May 3, 2021, admitted into evidence at the hearing held on May 31, 2024 as Exhibit E [NYSCEF Doc #21]. As is evident from the face of that document, it was filed with this court on May 3, 2021 in connection with a prior proceeding under LT-051020-19/BX. Also evident from the face of that document is that Respondent asserted she was "experiencing financial hardship". A tenant's "hardship declaration" pursuant to the COVID-19 Emergency Eviction and Foreclosure Prevention Act of 2020, L 2020, ch 381 ("CEEFPA"), as amended by L 2021, ch 417, Part C, Subpart A, in which the tenant selects the option indicating a financial hardship, "shall create a rebuttable presumption that the tenant is experiencing financial hardship for the purposes of establishing a defense under [TSHA]". Accordingly, Respondent has met her burden of showing that she experienced financial hardship during the COVID-19 covered period warranting the severing of any unpaid rent for that period from any possessory judgment entered in this proceeding. Compare, e.g., 3220 Parc Inc v Gavin (77 Misc 3d 1232[A], 182 NYS3d 604 [Civ Ct Bx Co 2023])(finding no rebuttable presumption created where respondent-tenant did not select financial hardship option in their hardship declaration).
Petitioner presented no evidence at the hearing to rebut the presumption created by Respondent's filing of her CEEFPA hardship declaration indicating financial hardship. Further, the hardship declaration was not the only evidence Respondent presented of the financial hardships she suffered during the COVID-19 covered period. Respondent testified credibly and the court finds as a matter of undisputed fact that while she had not been working in 2019, she started a new job in February 2020, was laid off from that new job due to the pandemic in March [*4]2020, and then was unable to work for an extended period of time first because she and her family members became ill from COVID-19 and then because she was diagnosed with cancer which required chemotherapy and radiation treatment.[FN2]
Whereas her son's father, Javier Cabrera, also named as a Respondent in this proceeding, had helped with rent payments in 2019 even after moving out, he stopped doing so in 2020 and the only financial help Respondent received during the pandemic was from her son who gave her money to buy food and medications. Throughout the pandemic Respondent had no income of her own but applied for and was approved for ERAP to pay twelve months of rent arrears. She started working approximately a year ago, her financial situation has improved and she has been making rent payments in recent months. Based on all of these facts, it is the court's determination that Respondent suffered financial hardships throughout TSHA's "COVID-19 covered period".
In opposition, Petitioner presented no evidence but argued orally at the conclusion of the hearing that because the ERAP grant covered only twelve months of arrears and did not include the additional possible three months of prospective rent permitted by the statute, the court should infer that Respondent was no longer suffering a financial hardship at the time of her ERAP application in March 2022. While this is an interesting argument, no evidence was presented as to why Respondent's ERAP grant did not include the optional three additional months of prospective rent and, without more, this court will not assume as Petitioner does that it was because Respondent was no longer suffering a financial hardship in March 2022. The evidence at the hearing was to the contrary: In March 2022 Respondent was still undergoing cancer treatment, which was not completed until April 2023, and Respondent did not start working again until June 2023.
CONCLUSION
Based on the foregoing, it is hereby ORDERED that:
• Petitioner is entitled to a judgment of possession and a money judgment against Respondent Martinez for $40,014.17, comprised of the $53,197.68 agreed to in the December 13, 2023 Stipulation; minus $623.91 (difference between amount charged as listed on Petitioner's ledger and $1260.75/month amount permitted under the ERAP statute for the first eleven months of the 12-month post-receipt-of-ERAP-funds period beginning February 2023); plus rent for January 2024 (the last month of the 12-month ERAP period) at $1260.75; plus rent for February through June 2024 at the current preferential lease amount of $1357.58/month; minus $13,868.25 (rent due for the 11-month TSHA period of March 2021 through January 2022 at $1260.75/month); minus Respondent's payments of $5380 and $1360 credited in May and June 2024; and
• A warrant of eviction shall issue against Respondent Martinez forthwith, execution stayed through August 9, 2024 for payment of $40,014.17 plus any rent/U&O due for July and August 2024, "earliest execution date" under RPAPL § 749(1) of August 12, 2024; and
• Petitioner is entitled to a money judgment only for $13,868.25 (rent due for the 11-month TSHA period); and
• Petitioner shall inspect Respondent's stove top and oven and repair as required by law on or before July 31, 2024, on a date and time to be arranged between the parties' attorneys; and
• Petitioner may seek a default judgment against the non-appearing Respondent-Tenant J Cabrera through the court's Warrant Department.
This constitutes the Court's Decision/Order, which is being uploaded on NYSCEF.
Diane E Lutwak, HCJ
Dated: July 8, 2024
Bronx, New York

Footnotes

Footnote 1:As rent is "typically due on the first of the month unless otherwise specified in the lease", 1920 Walton LLC v Bothwell (69 Misc 3d 1211[A], 131 NYS3d 855 [Civ Ct Bx Co 2020]), the court includes rent due for the full month of January 2022 as one of these eleven months, and does not pro-rate it.

Footnote 2:While there was no evidence presented on the repercussions of a cancer diagnosis and treatment, it is now common knowledge that someone receiving chemotherapy and/or radiation treatment for cancer is immunocompromised, is therefore at higher risk of serious complications from COVID-19 and other viruses and accordingly is generally advised to take all available precautions to avoid exposure.